## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-CA-00829-SCT

*SHANNA CURTIS WILSON*

*v.*

*SOUTHERN FARM BUREAU INSURANCE*
*COMPANY AND NELSON MILLER*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/19/94 |
| TRIAL JUDGE: | HON. WILLIAM H. BIZZELL |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PEGGY A. JONES |
| ATTORNEYS FOR APPELLEES: | H. SCOT SPRAGINS |
| | LESTER F. SUMNERS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., MCRAE AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

On September 2, 1986, Elizabeth Curtis and Nelson Miller were involved in a head-on automobile collision. Elizabeth Curtis died as a result of the injuries that she suffered from the accident. At the time of her death, Ms. Curtis had three children: Leslie Michael Curtis (Mike) was twenty-one, Brian Lee Curtis was eighteen, and Shanna was twelve. Although Shanna's father was still living, Mike was appointed as her guardian by the Chancery Court of Marshall County on September 5, 1986. Shanna's father joined the petition for appointment of Mike as Shanna's guardian.

The three Curtis children filed a wrongful death action against Nelson Miller, with Farese, Farese & Farese, P.A. representing them. The parties agreed to a settlement in which Miller's insurance company, Southern Farm Bureau Insurance Company (Southern Farm), would pay Miller's policy limit of $100,000.00 in four equal parts, with the three Curtis children and their attorneys each receiving an equal one-fourth share. The settlement agreement further stipulated that the Curtises

would sign a release barring further claims against Miller or Southern Farm. The chancery court entered a decree authorizing settlement on behalf of Shanna by Mike, pursuant to Mike's complaint to settle Shanna's claim. According to the decree, Southern Farm was to pay $33,333.33 to Mike, $8,333.33 of which Mike was instructed to pay to the Farese firm, and $25,000.00 of which Mike was to deposit in a joint control agreement with John Booth Farese at First State Bank in Holly Springs on behalf of Shanna. The funds were supposed to remain on deposit in an interest bearing certificate of deposit until further court order. The court ordered that a copy of the decree be served upon the bank, and that the bank execute a receipt acknowledging their receipt of the funds and the copy of the decree. The chancellor assessed the court costs against Southern Farm.

Southern Farm issued the $100,000.00 check, and John B. Farese prepared the individual checks for the Curtis children. He gave the checks and a copy of the chancellor's decree to Mike with instructions to take the decree to the bank. Although Mike did deposit Shanna's $25,000.00 share of the settlement with First State Bank in the form of a certificate of deposit, he failed to set up a joint control agreement with the Farese firm or to deliver the chancellor's decree. John Booth Farese did not accompany Mike to the bank, so a joint account could not be established. The bank never received a copy of the chancellor's decree. As a result, the bank was not aware of the restrictions that were supposed to be place on the account. In September of 1988, Mike proceeded to cash in the certificate of deposit, deposit the money into a checking account, and withdraw funds from that account, both for Shanna's support and for his personal benefit. Eventually the entire account was depleted, along with Shanna's share of her mother's life insurance proceeds.

Shanna's father filed a complaint on behalf of Shanna against Mike, John Booth Farese, John B. Farese, Farese, Farese & Farese, P.A., Nelson Miller, and Southern Farm, seeking to set aside the release and receive damages for the wrongful death of her mother, and in addition or in the alternative to be reimbursed by the Farese firm for the mismanagement of her settlement funds. Shanna also listed National General Insurance Company (National General), surety for the bond posted by her guardian, as a party to the mismanagement of her estate, requesting that they be required to pay the amount on the bond. Shanna entered into settlement agreements with both the Farese firm and National General. The chancery court entered a $16,666.67 plus 8% interest judgment against Mike in favor of Shanna for her share of her mother's life insurance proceeds, but dismissed all other claims. Shanna appeals to this Court, citing as error the failure of the chancellor to set aside the release from the original wrongful death action and the chancellor's determination that Shanna's settlement with the Farese firm bars further relief on her behalf.

This Court will not disturb a chancellor's findings of fact supported by substantial evidence in the record unless they are found to be manifestly wrong or clearly erroneous. However, the standard of review for questions of law is de novo. **Smith v. Dorsey**, 599 So.2d 529, 533 (Miss. 1992) (citations omitted).

## I.

### THE RELEASE OF SHANNA CURTIS WILSON'S CLAIMS AGAINST NELSON MILLER AND HIS INSURER, SOUTHERN FARM BUREAU INSURANCE COMPANY, WAS VOID AND SHOULD BE SET ASIDE BECAUSE OF THE PARTIES' FAILURE TO MAKE CERTAIN THAT THE TERMS OF THE DECREE AUTHORIZING SETTLEMENT OF

**THE SAID MINOR'S WRONGFUL DEATH CLAIM WERE FAITHFULLY EXECUTED IN EVERY RESPECT.**

Shanna first argues that the release should be set aside, because Southern Farm and Miller failed to ensure that the chancellor's decree was carried out. In support of this proposition, she relies heavily upon this Court's decision in *Joyce v. Brown*, 304 So.2d 634 (Miss. 1974). In *Joyce*, Kenneth Joyce, a minor, was injured in a car accident, and his mother was appointed as his legal guardian after posting the required $500.00 bond. *Id*. at 634. The chancellor authorized Mrs. Joyce to settle Kenneth's claim against the other driver and his father in the amount of $8,500.00. *Id*. However, the court further ordered Mrs. Joyce to post a $6,000.00 bond. *Id*. Mrs. Joyce failed to post the $6,000.00 bond, but proceeded to settle the claim and sign a release. *Id*. at 634-35. She delivered the endorsed draft and release to her attorney, the attorney never deposited the money into a guardianship account, and the attorney subsequently died leaving no trace of the $8,500.00. *Id*. Mrs. Joyce then brought suit to set aside the release as void, based upon her failure to pay the $6,000.00 bond. *Id*. In declaring the release void for failure of Mrs. Joyce to post the required bond, this Court stated:

> Because the posting of any bond required by a chancellor is a condition precedent to the authority of a guardian to act in behalf of a minor, it is incumbent upon those paying money to a guardian to make certain that the chancellor's decree is faithfully executed in every respect.

*Id*. at 635-36. Shanna relies upon this language in support of her proposition that the release in this case should be declared void because of the failure of Southern Farm and Miller to ensure that the chancellor's decree was specifically carried out. She asserts that Southern Farm and Miller were responsible for making sure that the $25,000.00 settlement was deposited into a joint control agreement and that the bank received a copy of the chancellor's decree. These omissions, Shanna claims, rendered the release void.

The chancellor in this case cited *Joyce* in his opinion. He determined that there were significant differences between *Joyce* and the instant case: 1) In *Joyce* the guardian never received the settlement money, but in this case, Mike received the $25,000.00, placed it into an account and left it there for two years before spending it; 2) Mike actually used some of the money for Shanna's benefit, whereas the minor in *Joyce* never enjoyed any benefit from his settlement; 3) the guardian in this case (Mike) posted a $10,000.00 bond as a requirement for being appointed guardian, and the chancellor did not order Mike to post any further bond before receiving the settlement or executing the release; 4) the requirement that Mrs. Joyce post the $6,000.00 bond was labeled by this Court as a condition precedent to her authority to act, whereas in this case the delivery of the chancellor's decree to the bank was not a condition precedent; and 5) in *Joyce* the party responsible for the minor not receiving his settlement was the dead attorney, so he had no other recourse except against the original defendant, but in this case Shanna was able to seek reimbursement from both Mike and the Farese firm, who were ultimately responsible for the mismanagement of her settlement. These differences clearly distinguish Shanna's case from *Joyce*. Most significantly, there was no failure to post a bond in this case. The proper statutory procedures were followed in appointing Mike as Shanna's guardian and in his receiving authorization to enter into a settlement agreement and execute a release on behalf of Shanna. As a result, the settlement proceedings and release were valid. Southern Farm and Miller fulfilled all of their obligations under the settlement agreement and chancellor's decree. The fault in

this case was in the mismanagement of Shanna's settlement funds, not in the settlement proceedings or execution of the release. We therefore refuse to set aside the release for a second recovery from Southern Farm and Miller, as they were not at fault here.

## II.

## THE RELEASE OF SHANNA'S CLAIMS AGAINST NELSON MILLER AND SOUTHERN FARM BUREAU INSURANCE COMPANY WAS VOID AND SHOULD BE SET ASIDE BECAUSE THE NATURAL FATHER OF THE MINOR CLAIMANT WAS NOT A PARTY TO THE PROCEEDINGS BY WHICH THE CHANCERY COURT AUTHORIZED SETTLEMENT OF THE MINOR'S CLAIMS.

Shanna claims that the release was void, because her father was not joined as a party to the settlement proceedings and was not present during the settlement conferences or hearing. She cites as authority Miss. Code Ann. § 93-13-281. That statute reads in pertinent part:

> In all proceedings involving a ward and brought under Chapter 13, Title 93, Mississippi Code of 1972, except as hereinafter provided, the proceedings shall join as defendants the parents or parent of the ward then living, or if neither be living, two of his adult kin within the third degree computed according to the civil law. When such petition shall be filed, the clerk shall issue process as in other suits to make such person or persons parties defendants, which process shall be executed and returned as in other cases. The clerk shall make publication for nonresident defendants as required by law. Any person so made a party, or any other relative or friend of the ward, may appear and resist the application.
>
> . . . .
>
> Process need not be served hereunder, however, if the parent or parents then living, or if they both be not living if any two (2) of his adult kin within the third degree computed according to the civil law, shall unite with the guardian in his petition. If the ward has no parent then living and no kindred within the prescribed degree whose place of residence is known to him or his next friend, it shall not be necessary to make any person defendant thereto.

The chancellor reasonably interpreted this statute to mean that any surviving parent must be joined as a defendant when the proceedings to appoint a guardian are begun, and not necessarily at every step in the proceedings. In support of his interpretation, the chancellor pointed to Miss. Code Ann. § 93-13-51, which does specially require that any surviving parent be notified of the sale of a ward's land. Miss. Code Ann. § 93-13-51. The implied legislative intent, therefore, was not to require notice under the provisions of § 93-13-281 alone. In this case, Shanna's father did join Mike in his petition to be appointed guardian of Shanna, and Mike was present at all settlement proceedings on behalf of Shanna. This was sufficient to satisfy the requirements of § 93-13-281. Absence of the surviving parent should not be a hindrance to such proceedings where the court-appointed and parent-approved guardian is present. As a result, the release should not be declared void merely because Shanna's father was not joined as a defendant in every step of the settlement proceedings.

## III.

**SETTLEMENT OF SHANNA'S CLAIMS AGAINST THE ATTORNEYS WHO REPRESENTED HER DOES NOT PRECLUDE HER FROM ASSERTING HER SEPARATE AND DISTINCT CLAIM SEEKING TO HAVE THE RELEASE IN FAVOR OF NELSON MILLER AND SOUTHERN FARM BUREAU INSURANCE COMPANY SET ASIDE SO THAT SHE MAY PURSUE A WRONGFUL DEATH CLAIM AGAINST THE SAID NELSON MILLER AND HIS INSURER, SOUTHERN FARM BUREAU INSURANCE COMPANY.**

In making his opinion, the chancellor partially relied on the fact that Shanna had been reimbursed by the Farese firm through their confidential settlement. The chancellor stated, "I have assumed that Plaintiff received from the Farese Defendants an amount which made her whole as to the guardianship funds. This is all that she is due. . . .Plaintiff is entitled to one recovery, and only one, for the loss sustained from the foregoing events."

Shanna argues on appeal that her claim against the Farese firm and her claim against Southern Farm and Miller are separate and distinct claims, such that recovery from the Farese Defendants should not bar recovery from Southern Farm and Miller. Southern Farm and Miller argue that the two claims are incongruous, because the claim for mismanagement of the settlement inherently asserts that the settlement was valid whereas Shanna's claim against Southern Farm and Miller seeks to have the settlement proceedings declared void. This argument fails, because it is not the settlement proceedings which Shanna asserts were invalid, only the release. Shanna should not be barred from seeking recovery both from the Farese Defendants for mismanagement of her settlement funds and from Southern Farm and Miller (by setting aside the release) for the wrongful death of her mother. However, as previously stated, the release was validly executed, Southern Farm and Miller were not responsible for the squandering of Shanna's settlement monies, and therefore we do not set aside the release for a second recovery from Southern Farm and Miller by Shanna.

## CONCLUSION

Southern Farm and Nelson Miller fulfilled their responsibilities under the chancellor's decree and the settlement agreement by issuing payment of the full $100,000.00 agreed upon by the parties. They were under no further obligation by the court to ensure that Shanna's guardianship account was properly opened. That duty was placed upon Shanna's guardian and attorneys. The statutory requirements were followed in the appointment of Shanna's guardian, the settlement proceedings, and the execution of the release, and Shanna was sufficiently represented by her guardian at all times. Therefore, the release is not void as a result of Shanna's father's absence from the settlement hearing, especially in light of his joining the petition for appointment of Shanna's brother as her guardian. Finally, while Shanna's claim against the Farese Defendants is separate and distinct from her claim against Southern Farm and Miller and recovery from the Farese firm does not bar recovery from Southern Farm and Miller, the release is valid and bars any further recovery from Southern Farm and Miller. There is no assignment of error presented in this appeal requiring reversal of this case. The chancellor's decree is therefore affirmed.

**AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., NOT PARTICIPATING.**